Thank you, Your Honor. May it again please the Court, I'm Paul Norman, appearing on behalf of the Plaintiff Appellant, Matthew Enterprise. The most important issue in this case, I think, is whether or not the District Court erred in refusing or failing to instruct the jury on the functional availability defense, as we refer to it as. And primarily, the issue of whether or not functional availability requires equal treatment of competing purchasers in the way that objectives are set to get the favored pricing. The District Court got it right in denying Chrysler's motion to dismiss and then denying Chrysler's motion for summary judgment based on the functional availability defense. In both of those, it said that the However, when it came time to instruct the jury, the District Court refused Stevens-Creek's proposed instruction, which would have informed the jury of that fact, and instead instructed the jury simply that, in order to be functional, that, first of all, that Stevens-Creek had to prove that the incentives at issue were not functionally available to it, and that to do that, it had to show that they were not practically attainable through reasonable commercial means, with no mention of the evenhanded enforcement. I believe this is counter to just about every published decision that has defined what functional availability is. While they use different terms, whether it's equally available, evenhanded treatment, do not discriminate, and so forth, are applied in a reasonably equivalent manner, they all include in the definition the standard of evenhanded treatment. Well, can I just ask you to help me understand what you see as the delta between your proposed instruction and the instruction that was given? Because I guess I'm looking, I think, at your proposed instruction, and the second part of it does track essentially what was given, ultimately, right? The practically available to Stevens-Creek had it engaged in commercial, right? Right. That's the same as what was given. We would have asked, we would, we proposed an instruction which would inform the jury, which we believe is a correct statement of law, that in order for favored pricing or incentives in this case to be functionally available, they must both be made available in an evenhanded manner, and they must be practically attainable. Yes. Okay. I'm looking at your instruction. All I was asking was, you just want added basically that first little clause that says it has to be administered in a reasonably evenhanded manner. Right. And I guess my question to you is, what does that even add to the second part of the instruction which does track what was given? Because I don't see there being any cases where a jury would say, you know, that these incentives weren't practically available had your client engaged in commercially reasonable efforts, blah, blah, blah. But they nonetheless would have come out differently had that additional language been added. And that's, I just need to see, I need your help in seeing what's the delta between these two. Evenhanded treatment in this case, the reason there wasn't an evenhanded treatment, and if the jury had been instructed, it would have found that they weren't functionally available. There were several facts put into the record, and they focused on the way that two competitive dealer that came into the market and was 14 miles away. Can I just cut you off? I was actually asking it in an abstract sense. Okay. Just conceptually. I don't understand. To me, the second part of that instruction fully encompasses the kinds of cases that we would be concerned about with the reasonably evenhanded. So I'm not even talking about the facts of this case. I would respectfully disagree that practical attainability encompasses evenhanded treatment or vice versa. Well, we know that evenhanded doesn't mean it has to be exactly the same for everybody, right? You agree with that. And I assume that's why the district court was reluctant to give that, because it might mislead the jury into thinking that it has to be the same line across the board for everyone. And that's not what the law requires. No. Evenhanded treatment requires that each competing purchaser have more or less an equal opportunity to Okay. So that's what I'm asking. Conceptually, how is it that the second part of that instruction doesn't capture all of those cases? Just forget about the facts of this case. Just help me understand conceptually, what was it that you guys were trying to accomplish? Because as we have attempted to explain in our brief, if one competitor knows they're going to get the favored pricing, and because its objectives are set at a level that there's no question it's going to hit them based on its past sales or expected sales, and another competitor, in this case Matthew, has them set on a basis that doesn't reflect the current market, it doesn't reflect the current Then it would not be practically available, right? That the jury would say, oh, yeah, boy, they've set this unrealistically high threshold that you would never be able to That's not how Chrysler argued it at trial in Horn and Threave. You're complaining about the jury instruction. I'm trying to just, I don't even understand your argument is what I'm trying to tell you. Right. I think it just makes no sense to me. I'm just trying to understand what is it, what group of cases that would not be captured by the second part would somehow be captured by the first part in a way that's consistent with what we know the law says? Well, any competitor, I suppose, can hit a certain amount of sales if they give cars away. In this case, the objective of the competitors was to make as many sales as they could but still be profitable in doing it, and obviously in doing that is a question of what, when they make a, during a month, when they're selling cars in competition with one another, the question is, what is my cost basis here? Fremont, because its objectives were much lower than what it was selling, continuing throughout the entry period, knew that it was going to get at least, you know, equivalent of $750 a month, which could be used to apply in competition for sales where it needed to compete on price with another dealer. Matthew did not have that luxury, and so when it went into a month, it could start by trying to compete, but when it became clear it was not going to get that pot of money at the end of the month, the $750 per vehicle sold, at some point it just had to, what's referred to in the record as a reservation price, is a price below which a dealer will not go in order to make a sale, and at some point it just, it hit its reservation price and couldn't make the sale, and therefore it lost sales and could not make the objective. Okay. I mean, did you, I guess I'm just, I feel like we're not communicating because I just, I was trying to tell you this is the third time that I'm not interested in the facts of this case. I'm still just trying to understand at a conceptual level what you think was going to be accomplished by the language you wanted. If you don't have an answer to that, that's fine, but I just, you keep repeating, like you want to get back to the facts of this case, and it's just not helping me. Because I think the facts of this case illustrated why even added treatment is made part of the functional availability, that it makes a difference, it makes a difference whether a dealer's They don't have to set the same threshold for you as for the other dealer, right? I think the functional availability requires a manufacturer to set the threshold equal to dealers not across the board the same, but proportionate to their expected sales. A formula. If the dealership applies a formula, the actual numbers that are plugged into that formula don't have to be the same. Would you agree with that? That's true. I agree with that. And the formula's the same for all dealers, and the formula does not discriminate against one dealer because it applies different market conditions in the input and a different market condition, and that's what happened in this case. And I'm sorry I keep going back to this case, but I think it helps illustrate is that you have a formula, it's based on historic sales. Fair enough. But what if there are no historic? That was the problem here. If there were no historic sales, so the formula had to be adjusted to account for the fact that there were no historic sales. How is that not even-handed? Because the formula had to be adjusted. What Chrysler should have done here, and what the business, California Business Center, in fact, recommended to Chrysler, but they declined to do it, was to adjust Stevens Creek's to account for the fact that it no longer was in a market without a dealer 14 miles away that everyone agrees was going to take a significant number of sales away from what Stevens Creek had been able to sell in the past. And that would have- That's not the point. The point was to try to adjust the formula to account for the new entrant into the market, not to adjust the formula for existing dealers, because the formula remained the same for all of the existing dealers. So the question was how do we adjust the formula for this new entrant? So that the answer that you adjust the existing dealers is not really to me relevant in terms of even-handedness, because that wasn't the dilemma that Chrysler was facing. The dilemma was to how do we get this new entrant into the formula? Well, Chrysler used planning potential for the new entrant, and we don't dispute that, and nor do we actually say that Chrysler was then required to use planning potential for each dealer that existed. What we are saying is that Chrysler needed to recognize that when Fremont came in, the historic sales that they were using to set Matthew's objectives were no longer valid, because those historic sales were made in a market where there was less competition. But that's not even-handedness. Then that's the opposite of even-handedness, because all of the other dealers would still be governed by the formula, and you wanted Stevens to use the formula. We submit that Chrysler should have adjusted the objectives for all dealers based upon what effect did the new entrant have on their expected sales, and reduce them downward proportionally. We just believe that Matthew Enterprise, as the business center indicated when they asked for that adjustment, that Matthew was going to be the one impacted the most, because it was the largest selling dealer at that time, and was closest to the new entrant, and it sold a significant number of vehicles into that area on it. So we weren't asking for any special treatment. We were just saying the formula needs to be adjusted, because this is a significant change in market conditions, and to be even-handed, you need to make that change. Why doesn't the practical availability prong capture that argument? Because Matthew, I suppose, if it was willing to sell vehicles at a loss, could have attained that. But it shouldn't have had to. If they had set the formula, set the objectives in an even-handed manner, it could have competed against Fremont without having to sell at loss. The jury heard all of this. The jury heard all of this and had an instruction as to whether or not it was practically available, and made its ruling. So why did the jury decision just reject your theory of what Chrysler should have done? Because the jury was never instructed that the requirement of an even-handed treatment as part of functional availability. If it had, it could have easily found that they were not functionally available, because the evidence was clear that the way that the objectives were set for Stevens Creek and for Fremont was not even-handed. I'd like to reserve just a little time, unless there's other questions now. Thank you, Counsel. So your objection really has to do with the jury was improperly instructed? Oh, yes, yes. That's, and we're saying that... That's the argument you had with my colleague. Yes. All right. Thank you, Counsel. Thank you. May it please the Court. My name is Colin Cass, and I represent Chrysler Group, LLC. The Robinson-Patman Act is not a dealer protection act. It is a statute designed to protect competition. And the Supreme Court made this very clear in its Volvo decision in 2006 by Justice Ginsburg, where she said that the Robinson-Patman Act signals no large departure from the broader purposes of the antitrust laws, and courts should resist any interpretations that are geared more towards the protection of competitors than of competition. And that principle decides this case, because what Stevens Creek is seeking here is protection for itself, not protection for competition. There is no question here that what Chrysler tried to do in this case was to facilitate entry and to have a growth incentive program that is indisputably pro-competitive. It encourages dealers to strive to sell more cars, to increase output. That is pro-competitive. The facts here that the jury found was that Stevens Creek acted irrationally with what it did. What it did, the facts are very simple. When Fremont entered into the marketplace, it lowered prices along with the five other or four other surrounding dealers. It lowered prices, and it made its incentives. The owner of Stevens Creek, Matthew Zahiri, did not like the reduced margins, so he fired his star general manager, and he proceeded to increase prices. He increased prices by $1,400 per car. His prices were $2,000 per car more than the other surrounding dealers, the five other surrounding dealers, Fremont and the four others. It was on that basis that Stevens Creek decided not to, effectively decided not to participate in our program, because if you're going to charge $2,000 more per car, you're going to sell less cars. People are going to walk out of your dealership without a deal, and you're not going to earn your incentives. But we showed, and it was undisputed evidence, we showed that that decision was irrational. Stevens Creek would have made more money had it priced at the level that its general manager had priced. It had just lowered the prices by $500. It would have made more money and sold more cars, and it would have earned its incentives. So if it had lowered its price along with all the other dealers, just like our incentive program was designed to do, Stevens Creek would have made more money, and it would have earned its incentives. Counsel, specifically opposing counsel takes issue with the jury instruction and the failure of the district court to include a component of even-handedness. Could you address that issue, please? Yes, Your Honor. So I think the court's questions when opposing counsel was discussing it hit the nail on the head. The concept of commercial availability really governs what the defense and what the statute is designed to ensure, because what this court has to do is it has to make sure whatever rule it has for functional availability is enough to make sure that it doesn't capture all these other programs. Every incentive program in America owes its existence to the functional availability defense. If this court were to adopt a standard that is difficult for manufacturers to meet or condemns pro-competitive programs, then that's a problem. The concept of commercial reasonableness, which is what the court adopted, if the dealer can achieve the incentive by acting commercially reasonable, that satisfies the purposes of the act, the purposes of the defense, because reasonable dealers would have earned the incentive. That is, there would be no price discrimination among all reasonably acting dealers. They would have written exactly the same check to Chrysler for each car if they acted reasonably. There would be no price discrimination. That negates the element of price discrimination, which is the foundation, one of the two foundations for the functional availability defense. Roberts. Can I ask you about the Smith case from? Yes. Is it the Sixth Circuit? I don't remember what circuit it's from. But anyway, the court there said that the, like this, something like this incentive has to be functionally available to all participants on an equal basis. And I think that's, obviously that's what they place greatest weight on, is the on an equal basis. And they say that that's all they were trying to get the district court to tell the jury. And why was the instruction that was given sufficient to capture that concept? The instruction is sufficient in this case because the amount, the full amount of the discount was available to Stevens Creek if it acted reasonably. So the full amount of the discount was in fact available. If you look at the cases that talk about. Was it easily available? That's his point. So it was not equally available because the formula failed to take into account market conditions that changed the access to the program. So the, the concept that circumstances change, that happens all the time and manufacturers need to have some level of discretion to determine when to, when and where to accept, to make those changes. If we, if we were to adopt Stevens Creek's rule in this case that we couldn't make exceptions, we couldn't give Stevens Creek the exception at once because we'd have to then give it to Normand into Putnam, to all these other dealers in the area and we would have a non even handed program. What Smith was talking about was it was saying, look, if you have a formula that applies in that case, it just applied to everybody. If you have a formula, then the next question is, can all the dealers achieve the discount? And that was an attainability issue. And all of the functional availability cases that you look at all focus on actually attainability. Can you say that the equally available condition is subsumed in the functional availability rubric? So we, we believe that it is, it is mostly subsumed within it and that a, if it is in fact attainable, then it is completely subsumed. There are some cases where it is very difficult to achieve the incentive, but the formula is in fact even handed and courts will say, because it's even handed, it's okay that it's really difficult to achieve. So even handedness can be a sufficient condition to uphold the program, but it's not a necessary condition. What is necessary is that the full amount of the discount be achievable by the dealers using commercially reasonable efforts. That is the, that is actually the name of the defense. Is it available to the dealers? And it, it is the purpose why, you know, if you look at the purpose of the functional availability doctrine, that is what negates the two elements. Competitive injury, injury to consumers, injury to retail competition. If commercially reasonable dealers can achieve the incentive, there's no injury to competition and there's no price discrimination because dealers who act reasonably would actually pay the same price for each and every car. The only way that it is somehow, you know, potentially, you know, unfair would be if this were a dealer protection statute. If you had two different formulas, if you had two different formulas, some dealer could say, well, that's unfair. And then we'd have to litigate one dealer saying you have to give a discount and another dealer saying you can't give the discount because if you give that discount, you've got to give it to me. And if you give it to me, you've got to give it to this other person. You've got to give it to that other person. It makes these discounts unworkable. The reality is we had a growth incentive program and we needed to use prior year sales because otherwise it's not a growth incentive program and we needed a way to bring Fremont into the program. We didn't just give them zeros for prior year sales and automatically give them the incentives, which would be applying exactly the same formula. We used a proxy for prior year sales until they developed a sales history. That is perfectly a reasonable approach and if Stevens Creek had difficulty reaching it, if it couldn't reach its own objectives using commercially reasonable efforts, that would be a different case. But here the jury found that Stevens Creek acted irrationally by raising prices by $2,000 a car. In most of the other dealers, they were earning $300 a car. $300 a car. Stevens Creek was earning $2,400 a car. Obviously, it's not going to earn its incentives if it's going to charge eight times in profits what the other dealers are charging. You indicated what the jury found. Did you have special interrogatories going to the jury? The only interrogatory, well, we had interrogatories on the elements. There was evidence to get the jury to conclude. Correct. And it was undisputed, largely. Really going back to then, I suppose is whether the jury instructions were ruining us. So the question, the evidence on the question of whether it was practically attainable, the jury heard that Mr. Norman presented some statistics about the difference between Fremont's objectives and Stevens Creek's objectives, but it heard undisputed evidence that we presented and their expert did not dispute that Stevens Creek would have earned a million dollars more putting aside the incentives had it not raised its prices. And then when you add the incentives on top of it, I mean, this is undisputed evidence. That's the problem I have with it. I enjoy your argument. It makes good sense. But how can we say the jury found as a factual matter that even though it's the only evidence in there, the jury has the right and frequent sometimes do just, no, I'm not going to consider that. So how do we know without interrogatories that they accepted your argument? Because there was the, the, there was an interrogatory on this question. Was there price discrimination because you can, because the discounts were practically available through commercially reasonable effort. And the court found that it's right in that jury. It was not a general jury verdict. It was not verdict for the defense. There was an element by element. And when it came to price discrimination, which built in functional availability, using the words commercial commercially reasonableness, it ruled in our favor. Okay. That's what I was asking. That was continued in those interrogatories. Yeah. Yes. In the verdict form. In the verdict form. Okay. So I think that's, that's our position as to whether even-handedness needs to be included. We also believe that for the reasons the court sort of suggested that if there was an obligation to use the words even-handed in the jury instruction, that would have been harmless because what Stevens Creek is seeking is exceptions to a formulaic process. It's seeking an individual exception that would benefit it, which would then create problems for us because then we'd have to give exceptions to all these other dealers. Now, Stevens Creek has a couple of proposals that says, well, we should use something called expected sales, which is just a made up number that he made up. There's nothing called expected sales that Chrysler uses. They had something that their expert presented called a gravity model that nobody else uses to base expected sales. That, if we had then used some sort of different formula or whatever, it would not have been a growth incentive program and would have made the program even less even-handed. All we did was have a proxy for Fremont to get them into the program, and that proxy is actually not even challenged by Stevens Creek. Did you object to the Crawford instruction that it contained the language even-handed? We did. What was the basis of your objection? So the basis of our objection was exactly the ones that I raised here. Number one, first we said that commercial, it was an either or. Either it had to be even-handed or it had to be practically attainable. That was argument number one. And argument number two was that there wasn't really evidence that would support an even-handedness instruction because what Stevens Creek was seeking was to make the program less even-handed and that it was not, in fact, challenging the use of a proxy for Fremont. Did you argue that inclusion of that language might mislead the jury or confuse the jury? Did you make that argument? I don't believe we used the words confusion. I mean, it was conducted in chambers, but I don't believe we used the word confusion. Okay. Thank you. Okay. That brings us now to the questions of burden of proof. In our view, the Texas v. Hasbrook decision resolves that question. The ABA model jury instructions resolves that question. They did it with respect to the functional discount defense, which is basically the same as functional availability, undermines the same elements of the prima facie case. So, if there's any questions on that, I'd be happy to answer that. And then, finally, as to rent assistance, our position is, and I think the important point is to understand that if what Chrysler had done was to offer to pay in perpetuity San Leandro's rent, in perpetuity, just offer to pay it for free, give them rent for free, that would be outside the act entirely. We did less than that. We had a program that offered some rent assistance to induce entry into the marketplace, and we scaled it back in a declining amount over three years. The court concluded that under this court's decision in England, that that was a commencement of business allowance, because it was entered into even before San Leandro entered the market, and it was less than the value of the leasehold. And under that basis, under England, it is outside the scope of the act, because the act requires that there has a reasonably contemporaneous requirement. You look at the time of contracting, and the Ninth Circuit had held in England that where you have a commencement of business allowance, that means the favored and disfavored dealers have to have commenced business at reasonably contemporaneous times, and that was not the case here. You're aware that opposing counsel didn't address this issue? During argument, yes. All right. Yes. Thank you. Thank you. Roboto? Neither Chrysler nor the district court contend that the equal, even-handed treatment and practical attainability are subsumed with each other. They both recognize them as being separate elements. Both of them take the position, which is unsupported by any decision, that it can be one or the other. In fact, it's refuted by the initial functional availability case, which was Morton Saul, which indicated that even though the favored pricing was theoretically equally available to all, it was not practically attainable, and vice versa. There are courts who have held that even though they may have been practically attainable, the fact that the program is set up in a way that it discriminates against certain purchasers is sufficient to rule out functional availability, and we cite those in page four of our brief, including Hellermann Breweries and Mueller v. Trade Commission, which is a Seventh Circuit case. The issue of whether there's a lot of factual statements that Mr. Cass made that I would dispute as to, and obviously the evidence in this trial is detailed on it, but the point is that the jury never had a chance to consider whether functional availability included even-handed treatment, and I think the outcome would have been differently had they been instructed that. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case is submitted for decision by the court. That completes our calendar for the morning. We are in recess until 930 a.m. tomorrow morning. Thank you.
judges: Wallace, Rawlinson, Watford